Reed, P. J.,
delivered the opinion of the court.
But one question is presented by the record, — whether or not property that had no existence at the time of the making of the bonds, and not until some years after the territory had been set off and school districts numbers three and seventeen formed, could be taxed for the payment of the bonds.
The bonded indebtedness was created in 1888. In the same year the new school districts were formed. The land remained the property of the United States until appropriated and improved by the defendant. Until such entry and improvement, the land was not taxable, and tbe property of defendants not in existence.
By the general school law of 1883 (Gen. Stats., sees. 3022 and 3023), provision is made for the creation of new school districts, and the division of existing districts to create sucli new ones. The regularity of the proceedings in creating the new districts in this case and the proper corporate existence of districts numbers three and seventeen are unchallenged.
Section 3090, Gen. Stats, (sec. 4062, Mills’ Stats.), is as follows : “ No change in the boundary lines of such school district shall release the taxable real .estate of the district from assessment and levy of taxes to pay the interest and principal of such bonds, and if there shall be any change of the lines of such school district, so as to leave any portion of the taxable real estate of the district out of the district, which was subject to taxation in the district at the time of the issue of *286 such bonds, the assessment and levy for principal and interest of such bonds shall be made on such property as if it were still within the district, and if there shall be any change of .the lines of such school district, so as to annex any taxable real estate, after the issue of such bonds, the real estate so annexed shall thereafter be subject to the assessment and levy for principal and interest of such bonds.”
This is the only statutory provision on the subject that I can find, and upon the construction the decision must depend. The language seems so clear and unmistakable that, were it not for the ingenious argument of counsel, no construction would seem necessary or possible.
The first part of the section seems to clearly limit it to the taxable real estate existing within the boundaries of the original district at the time of the creation of the bonded indebtedness. If any doubt existed in regard to the construction of the first part of the section, it would seem to be entirely removed by what follows. The language is clear and explicit. If by the changing of the lines any portion of the taxable real estate out of the district “ which was subject to taxation in the district at the time of the issue of such bonds," etc.; clearly limiting the property to be taxed to the real estate subject to taxation within the territorial limits at the time of the creation of the debt, but subsequently cut off and embraced in the new district. If the section is not conclusive, it must be by reason of some conflict with constitutional provisions rendering it inoperative, and not by reason of any indefiniteness of the language used.
Two or three times in the course of argument for plaintiff, attention is called to what counsel designates as “ annotation” of the statute, referring to the “catch words” at the head of the section in Mills’Statutes. They are: “Change of Boundaries Does not Release Property.” Counsel seems to be laboring under the misapprehension, that they are a part of the statute and should control the construction; and they are no more a part of the statute than the general index, and are placed there by the compiler for convenience.
*287 It is urged that the construction put upon the section of the statute by the court renders it in conflict with article 10, section 8, and article 10, section 10, of the constitution. The former is that all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax ; the latter, “ all corporations in this state shall be subject to taxation for school purposes on the real and personal property owned and used by them within the territorial limits of the authority levying the tax.” I cannot see what application either provision has to the question under discussion. There is no charge of discrimination either in favor of or against the corporation, and in both the latter clause takes the present tax out of the constitutional provisions. It is alleged in the complaint that the property is in school districts three and seventeen, and that the assessed tax is for the benefit of number one. The right of a school district to tax is a local right, confined to the territorial limits of the district, and by both sections of the constitution the right is restricted to the authority within the territorial limits. Hence, unless by operation of law extending the right of taxation outside of the school district, and giving it extraterritorial rights, the provisions of the constitution would prohibit the authorities of school district number one from exercising any such right in the other districts.
Whether or not the statute in question is inoperative and void by reason of conflict with the constitution by attempting to extend the authority to tax property beyond the territorial limits of its authority is a question not involved, and upon which I express no opinion. If. void, that would end the case, as the only right to exercise extraterritorial authority must be derived from the statute. But the statute, being in derogation of the general law, and extending the right to tax only under certain circumstances and conditions, must be strictly construed and limited to the property embraced in it.
The argument in regard to uniformity of taxation and possible double taxation is one that works both ways, and might defeat the right contended for. The right of a school *288 district to impose taxes within its boundaries is unquestioned. If the right were exercised, and at the same time an adjoining school district imposed a tax upon the same property, the question might be presented and which was valid or whether both were, determined. Good reasons for holding the statute valid, and also for restricting its operations, specifically, to the property mentioned in it, are not wanting. At the time of the creation of the bonded indebtedness the right to tax the entire taxable real property of the district for the payment of interest and principal was undoubted, and parties taking the bonds had a right to rely upon such income for payment. Upon that basis and on that security the parties contracted. To diminish the security would be unjustifiable ; to increase it by adding property in expectancy would have been an act of gratuitous generosity.
The settlement, progress and development of a new country, and the necessity of increased educational facilities, was wisely anticipated by the legislature; hence the provision for the division of old districts and the creation of new ones. •When the new were formed from the old, the new took any .taxable real estate within its boundaries, subject to the liens existing, while for its own purposes and revenue it had to rely upon the taxable real property created subsequent to the creation of the bonded debt. To extend the right of taxa,tion of the original district to after-created property in the new district, or to relieve the new district from legal burdens imposed before its creation, would be equally unjust and inequitable.
It is insisted in argument, at some length, that the property in question was liable to the tax because it had not been specially exempted by statute. It is said, “ A statute exempting property from taxation must be explicit,” and several authorities are cited in support of the proposition. There is no question in regard to the correctness of the proposition or the numerous authorities asserting it, but I am at a loss to see how they are applicable to this case. The property has never been by legislative enactment or otherwise exempted *289 from taxation. The question- is not whether it shall- be-taxed, but where; and it is clear that no exemption is necessary to prevent property in one sehool district from being taxed in another. The question is one of authority, not exemption. If followed to its logical conclusion, the contention is that all taxable real estate made taxable after the debt was created or hereafter made taxable in school districts, numbers three and seventeen was taxable for a debt created for the building of a sehoolhouse in school district number one, until the debt should be discharged, making its neighbors pay its debts while it retained the benefits of its proceeds. After careful examination of all the authorities cited, I can find none sustaining the position assumed.
My conclusion is that the statute in question must be strictty construed and that the right to tax for the bonded indebtedness must be limited to the real estate which was taxable as such at the time the bonded indebtedness was contracted; that it had no prospective operation; that land at the time belonging to the United States was exempt from taxation and not taxable real estate at the time the debt was created; and that parties who subsequently acquired the title took it free from any liability incurred by reason of the debt.
The judgment sustaining the demurrer and dismissing the action will be affirmed.

Affirmed.